FILED

2007 Jan-23  PM 03:48
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| TRAVIS ALLAN CRYER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. CV-05-S-696-NE |
| | ) | |
| WERNER ENTERPRISES, INC., and | ) | (Lead Case) |
| LARRY RANDALL KIRBY, | ) | |
| | ) | |
| Defendants. | ) | |
| ------------------------------------------------- | | |
| | ) | |
| JOSH MOEBES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. CV-05-S-1539-NE |
| | ) | |
| WERNER ENTERPRISES, INC., and | ) | (Consolidated Case) |
| LARRY RANDALL KIRBY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

These consolidated diversity cases are before the court on defendants' motion

for partial summary judgment,[1] and defendants' motion to strike certain testimony and

---

[1] Doc. no. 34 (Defendants' Motion for Summary Judgment).  ***Nota bene:*** these cases have been consolidated for pretrial purposes only, with *Cryer v. Werner Enterprises*, CV-05-S-696-NE designated as the lead case.  *See* doc. no. 16 (Order of Consolidation).  Accordingly, except where noted, all docket sheet citations in this opinion will refer to *Cryer*.

other evidence proffered by one of the plaintiffs in opposition to summary judgment.[2] As explained below, the court concludes that the motion for partial summary judgment is due to be granted. Further, because the court need not consider the evidence made the subject of the motion to strike in order to resolve the present dispute in defendants' favor, the motion to strike will be denied as moot.

## PART ONE

### *Summary Judgment Standard*

Federal Rule of Civil Procedure 56 provides, in part, that summary judgment not only is proper, but "*shall be* rendered *forthwith* if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (emphasis supplied). Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In making this determination, the court must review all evidence

---

[2] Doc. no. 37 (Defendants' Motion to Strike).

and make all reasonable inferences in favor of the party opposing summary judgment.

The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting

*Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)).

## PART TWO

### *Summary of Relevant Facts*

These consolidated actions arise out of a motor vehicle collision that occurred on March 2, 2004 in the City of Madison, Alabama.[3] Around five o'clock p.m. on that date, defendant Larry Randall Kirby was driving a Freightliner Century tractor-trailer for his employer, defendant Werner Enterprises, Inc.[4] Kirby was unfamiliar with the area, having never traveled in Madison before, and inadvertently "missed the turn into the business where he was supposed to park his truck for the night."[5] Once he became aware of this miscalculation, Kirby

began looking for a place to turn around. He spotted a parking lot at

---

[3] Doc. no. 34, Statement of Undisputed Facts, ¶ 1.

[4] *Id*. at ¶¶ 1, 3. *See also id*. at Ex. 2 (Deposition of Larry Randall Kirby), p. 20, lines 9-12.

[5] *Id*. at ¶ 21.

Putnam Plaza and moved over onto the right shoulder of [Madison Boulevard] in order to turn into this parking lot.  However, just before turning into the parking lot, he realized that it was too small for him to turn the truck around.[6]

Thereupon, according to Kirby, "he cocked the cab [of the truck] at an angle and came to a stop on the shoulder of the road."[7]  James Allen Ray, an eyewitness who was present at the time and gave a deposition in this case, disagreed slightly with this description.  Ray was asked no less than three times whether the cab of the truck was "cocked," meaning that it was not in line with the trailer; he answered each time that it was not.[8]

In any event, it appears undisputed that the truck and its trailer came to a complete stop, resting on the right shoulder on the westbound side of the four-lane roadway known as Madison Boulevard, and not protruding onto the highway whatsoever.[9]  (Incidentally, stopping on the shoulder for reasons other than engine troubles is specifically prohibited by the Werner Enterprises Driver Manual that is distributed to all truck drivers, including Kirby.[10])  From that position, Kirby

---

[6] *Id.* at ¶ 22.  *See also id.* at Ex. 2, p. 22, line 20 - p. 23, line 11.

[7] *Id.* at ¶ 23.

[8] Doc. no. 35 (Plaintiff Cryer's Response in Opposition to Summary Judgment), Ex. 2 (Deposition of James Allen Ray), p. 27, lines 15-23.

[9] Doc. no. 34, Statement of Undisputed Facts, ¶ 24.  ***See also****, e.g.*, *id.* at Ex. 2, p. 28, line 18.

[10] Doc. no. 35, Statement of Additional Undisputed Facts, ¶¶ 6, 7, 10.

-4-

activated his truck's emergency flashers,[11] waited, and "watched traffic in both directions for approximately two to four minutes."[12]  Kirby testified that "the traffic was pretty moderate that day."[13]  Eyewitness James Allen Ray described the traffic as "heavy," but still moving at around fifty to fifty-five miles per hour.[14]  Another witness, Kevin Greene, who was traveling in one of the westbound lanes at the time, testified that the traffic was "fair to moderate,"[15] although he later also described it as "heavy."[16]

Kirby's plan was to execute one continuous turn from the right shoulder of the westbound side of Madison Boulevard, through the paved passage in the median, and into the inner-most lane of the eastbound side of that same road.[17]  In other words, although Kirby refused to characterize it as such, he intended to perform a "U-turn" across three lanes of traffic.[18]  Meanwhile, not far up the road, plaintiff Travis Allan

---

[11] Doc. no. 34, Statement of Undisputed Facts, ¶ 26.

[12] *Id*. at ¶ 25.

[13] *Id*. at Ex. 2, p. 29, lines 21-23.

[14] Doc. no. 35, Ex. 2, p. 27, lines 3-14.

[15] *Id*. at Ex. 4 (Deposition of Kevin Green), p. 8, lines 18-20.

[16] *Id*. at p. 9, lines 13-17.

[17] Doc. no. 34, Statement of Undisputed Facts, ¶ 24; doc. no. 35, Ex. 11 (Deposition of Larry Randall Kirby), p. 41, lines 7-18.

[18] Counsel for defendants repeatedly attempt to argue around the conclusion that Kirby attempted a "U-turn," asserting instead that there is testimony to support the contention that Kirby was executing a simple left turn because his starting position was more perpendicular to Madison Boulevard than parallel to it.  The court is not prepared to accept any one version of the facts, but it is worth pointing out that both Kirby and the eyewitnesses testified that the tractor-trailer was on

Cryer and his passenger, plaintiff Joshua Moebes, were waiting in Cryer's Chevrolet pick-up truck for a lull in the traffic so they could pull out of a parking lot and proceed west on Madison Boulevard, toward Kirby's truck.[19]  Eventually, there came a point when the closest car traveling west was approximately two-hundred feet away from the parking lot where Cryer and Moebes were waiting.[20]  Cryer took the opportunity to pull out onto Madison Boulevard, picking the left-hand lane on the westbound side of the street — furthest away from the tractor-trailer's position around two-hundred feet ahead.[21]  Kirby also recognized the opening in the traffic, but he did not realize that Cryer had already seized upon the chance to enter Madison Boulevard.[22]  Accordingly, Kirby began his planned turn.

It was not until the cab of his tractor-trailer reached the median, and he looked back to his left, that Kirby saw Cryer's vehicle for the first time.[23]  Cryer testified that he had seen Kirby's truck on the shoulder as he was waiting to exit the parking lot,[24]

---

the shoulder of the road, not in the driveway of the parking lot.  On a motion for summary judgment, the court is obligated to view that testimony in the light most favorable to the nonmovants.  *See Chapman*, 229 F.3d at 1023.

[19] Doc. no. 35, Ex. 2, p. 38, lines 8-21; *id*. at Ex. 4, p. 18, line 18 - p. 19, line 5; *id*. at Ex. 14 (Deposition of Travis Cryer), p. 35, lines 6-9.

[20] *Id*. at Ex. 2, p. 39, lines 2-18.

[21] *Id*. at Ex. 2, p. 28, line 19 - p. 29, line 7; *id*. at Ex. 4, p. 17, line 17 - p. 18, line 2; *id*. at Ex. 13 (Deposition of Joshua Moebes), p. 18, line 23 - p. 19, line 6; *id*. at Ex. 14, p. 34, lines 10-14.

[22] Doc. no. 34, Statement of Undisputed Facts, ¶ 31.

[23] Doc. no. 35, Ex. 11, p. 33, lines 12-22.

[24] *Id*. at Ex. 14, p. 37, lines 9-17.

but the next time he made eye-contact with the rig was when it pulled out in front of him.[25]  At the moment of visualization, Cryer stated that the truck was not yet into the median, but was blocking both lanes of westbound traffic.[26]  By that point, Cryer and Moebes were traveling at approximately forty to forty-five miles per hour (the speed limit along that stretch was fifty-five), and even though Cryer applied his vehicle's brakes in earnest, he could not avoid a collision.[27]  Kirby apparently attempted to accelerate to avoid contact as well, but to no avail.[28]  Cryer's pick-up slid under the trailer attached to Kirby's tractor, and both Cryer and Moebes suffered serious injuries.  All parties agree that Kirby "was working within the line and scope of his duties" as a truck driver for Werner Enterprises at the time of the crash.[29]

Travis Cryer filed his lawsuit against Werner Enterprises and Larry Kirby on April 5, 2005.[30]  Josh Moebes filed suit against the same defendants on July 15,

---

[25] *Id*. at p. 37, line 22 - p. 38, line 2.

[26] *Id*. at p. 38, line 14 - p. 39, line 6.

[27] *Id*. at p. 49, line 23 - p. 52, line 21.

[28] Doc. no. 34, Statement of Undisputed Facts, ¶ 33.

[29] *Id*. at ¶ 3.

[30] Doc. no. 1 (Cryer's Complaint).

2005.[31]  The cases were consolidated for pretrial purposes on October 11, 2005.[32]

Cryer's complaint contains two counts.  Count I alleges negligence and wantonness against both defendants, while Count II alleges that Werner Enterprises was negligent when entrusting its tractor-trailer rig to Kirby.[33]  Moebes' complaint contains five counts.  Counts I and II allege negligence and wantonness, respectively, against Larry Kirby.[34]  Counts III and IV are for negligent and wanton entrustment, respectively, by Werner Enterprises.[35]  Count V alleges negligence and wantonness against various fictitious parties,[36] but the court will dismiss those claims summarily because it is well-established that there is no fictitious party practice in federal court. *See*, *e.g.*, *New v. Sports & Recreation*, *Inc.*, 114 F.3d 1092, 1094 n.1 (11th Cir. 1997). Defendants have moved for summary judgment on all claims by either plaintiff that allege wantonness, or contain an entrustment element.[37]  Granting defendants' motion

---

[31] *Moebes v. Werner Enterprises*, *Inc.*, CV-05-S-1539-NE, doc. no. 1 (Moebes' Complaint). Since there is complete diversity of citizenship, *see*, *e.g.*, doc. no. 1, ¶¶ 1-2, and over seventy-five thousand dollars in controversy in each case, the lawsuits invoke the court's diversity jurisdiction. *See* 28 U.S.C. § 1332(a)(1).

[32] Doc. no. 16.  In the consolidation order, the court announced that it would assess the propriety of consolidation for trial purposes following the close of discovery.  *Id*. at p. 2.  In the order to accompany this opinion, the court will set a briefing schedule on that issue.

[33] Doc. no. 1, Counts I & II.

[34] *Moebes v. Werner Enterprises*, *Inc.*, CV-05-S-1539-NE, doc. no. 1, Counts I & II.

[35] *Id*. at Counts III & IV.

[36] *Id*. at Count V.

[37] Doc. no. 34.

would, therefore, leave only a negligence claim by each plaintiff for trial.

## PART THREE

### *The Entrustment Claims*

Both plaintiffs included allegations of negligent or wanton entrustment by Werner Enterprises in their complaints.  By the close of discovery, however, they apparently realized that they lacked sufficient evidence to support these claims.  Indeed, in  responding to defendants' motion for partial summary judgment, Cryer concedes that "discovery in this case has not uncovered evidence of negligent and/or wanton hiring [or training] of [d]efendant Larry Kirby by [d]efendant Werner Enterprises, Inc," and accordingly "consents to the entry of summary judgment on those issues only."[38]  As explained below, the court interprets this statement to mean that Cryer is abandoning his negligent entrustment claim.  For his part, Moebes has failed to respond to the motion for summary judgment *at all*, despite being ordered to do so.  Although the court recognizes that summary judgment may not be granted by default, *United States v. One Piece of Real Property*, 363 F.3d 1099, 1101-02 (11th Cir. 2004), defendants' attacks on the entrustment claims are clearly meritorious, as evidenced by Cryer's concession of the issue.

Under Alabama law, "'[t]he essential ingredients of a cause of action for

---

[38] Doc. no. 35, p. 7.

negligent [or wanton] entrustment are:  (1) an entrustment; (2) to an incompetent; (3) with knowledge that he is incompetent; (4) proximate cause; and (5) damages.'" *Edwards v. Valentine*, 926 So. 2d 315, 320 (Ala. 2005) (quoting *Mason v. New*, 475 So. 2d 854, 856 (Ala. 1985)).  The failure of proof in the present case relates to the incompetence element, which, notably, also is a component of a negligent hiring and/or training cause of action.  *See*, *e.g.*, *Hathcock v. Mitchell*, 173 So. 2d 576 (Ala. 1965) (noting that "the master is not liable for having employed incompetent servants unless their incompetency was the proximate cause of the injury").  The Supreme Court of Alabama repeatedly has observed that "[n]egligence is not synonymous with incompetency.  The most competent may be negligent.  But one who is habitually negligent may on that account be incompetent." *McGowin v. Howard*, 36 So. 2d 323, 325 (Ala. 1948) (internal citations omitted).  Moreover, "a single instance of negligence will not prove an employee incompetent."  *Collins v. Wilkerson*, 679 So. 2d 1100, 1103 (Ala. Civ. App. 1996).

Here, it is undisputed that Kirby: was drug- and alcohol-free;[39] graduated from a truck driving program that entailed safe driving instruction in addition to his on the job training;[40] holds a Commercial Driver's License which has never been suspended

---

[39] Doc. no. 34, Statement of Undisputed Facts, ¶¶ 7, 12, 16, 18.

[40] *Id*. at ¶¶ 5, 13, 14, 15.

or revoked;[41] has a driving record that is clear of any citations;[42] and has not been involved in a vehicle accident since he was himself run off the road while driving a passenger car in 1992.[43]  It appears, then, that the only evidence of incompetence is the very wreck that forms the basis of this lawsuit.  That, of course, is not enough. *See Collins*, 679 So. 2d at 1103.  *Cf. Pryor v. Brown & Root USA*, *Inc.*, 674 So. 2d 45, 51 (Ala. 1995).

Accordingly, although Cryer's concession is phrased in terms of negligent hiring and/or training, the court understands and accepts it as consent to the entry of summary judgment on the entrustment claim.  Further, even setting Cryer's position aside, the court finds that summary judgment is warranted on Moebes' entrustment claim.  Thus, judgment will be entered in favor of the defendants on Count II of Cryer's complaint and Counts III and IV of Moebes' complaint.

## PART FOUR

### *The Wantonness Claims*

Defendants contest the wantonness claims on the ground that there simply is no evidence sufficient to satisfy the legal standard applicable to such causes of action. Deciding this aspect of the motion requires a review of the concept of wantonness

---

[41] *Id*. at ¶¶ 6, 10.

[42] *Id*. at ¶ 9.

[43] *Id*. at ¶ 11.

itself, as well as several pivotal Alabama cases dealing with claims of wantonness in the context of motor vehicle accidents.

Wantonness is defined by the Alabama Code as "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others." Ala. Code. § 6-11-20(b)(3) (1975). What constitutes wanton misconduct depends on the facts presented in each case. *Tolbert v. Tolbert*, 903 So. 2d 103, 114 (Ala. 2004) (citing *Central Alabama Electric Cooperative v. Tapley*, 546 So. 2d 371 (Ala. 1989)). In all situations, however, wantonness "requires some degree of consciousness on the part of the defendant that injury is likely to result from his act or omission." *Tolbert*, 903 So. 2d at 114. *See also Lynn Strickland Sales & Service*, *Inc. v. Aero-Lane Fabricators*, *Inc.*, 510 So. 2d 142, 145-46 (Ala. 1987) ("Wilfulness or wantonness imports . . . knowledge and consciousness that the injury is likely to result from the act done or from the omission to act, and strictly speaking, is not within the meaning of the term 'negligence,' which conveys the idea of inadvertence."), *overruled on other grounds by Alfa Mutual Insurance Company v. Roush*, 723 So. 2d 1250, 1256 (Ala. 1998).

Stated slightly differently, wantonness grows out of a person's purposeful — as opposed to an unintentional — breach of a duty imposed by law. On the other hand, "[t]o prove wantonness, it is not essential to prove that the defendant

entertained a specific design or intent to injure the plaintiff." *Roush*, 723 So. 2d at 1256. It is the conscious *doing of an act*, with callous disregard of the *understood risk* of injury to others, that defines wanton conduct. *See Monroe v. Brown*, 307 F. Supp. 2d 1268, 1271 (M.D. Ala. 2004) ("To survive summary judgment, then, Mr. Monroe must establish a genuine issue of fact as to whether Brown (1) acted consciously when he attempted to drive through the intersection before the light changed from yellow to red; and (2) was conscious, based on existing conditions, that injury was a likely or probably [*sic*] result of his actions.").

The first element of the wantonness calculus — that Kirby consciously attempted to perform a "U-turn" across several lanes of traffic — is not really in dispute. Kirby candidly admitted his intentions during deposition, disagreeing only on terminology. Therefore, in order to proceed to a jury on the wantonness claim, plaintiffs needs to show that Kirby "was conscious, based on existing conditions, that injury was a likely or probabl[e] result of his actions." *Monroe*, 307 F. Supp. 2d at 1271. The evidence simply does not support such a contention. There is not a shred of testimony in the record to contradict Kirby's claim that he did not see Cryer's vehicle, or any other vehicle, at the time he initiated the "U-turn." Rather, it appears clear that Kirby waited for several minutes before attempting the maneuver, and in fact did not commence the turn until he subjectively believed he could do so safely.

-13-

The fact of the matter is that Kirby could not execute the "U-turn" safely under the circumstances, and serious injuries resulted from his miscalculation.  Whether a prudent person in his position would have engaged in this behavior is a question for a jury; but no reasonable juror could find, based on the evidence presented, that Kirby *knew* that his actions would likely cause injury to a third-party.

Several cases are illustrative.  The first, *Turkett v. Wedgeworth*, 266 So. 2d 265 (Ala. 1972), is actually cited by Cryer in *support* of his opposition to summary judgment.  The claim was for wantonness, and the facts are quite similar:  the defendant pulled out of a parking lot adjacent to the southbound side of a four-lane road and into the outside lane heading south.  *Id*. at 265.  "After . . . traveling a short distance, defendant cut across the inside lane while attempting to make a sharp turn in a U-shape fashion" so as to head north.  *Id*. at 265-266.  "This turn was made as plaintiff was approaching and traveling south on the inside lane.  In other words, defendant, trying to complete the turn, cut in front of plaintiff."  *Id*.  Quoting from an older case, the Alabama Supreme Court set out the well-settled rule of law:

> If defendant negligently turned in front of plaintiff's truck in dangerous proximity to its approach proximately causing the collision, a claim of negligence of count 1 was available to plaintiff.  If defendant [1] was *conscious of the danger*, either saw plaintiff has he approached, or knew that someone was likely thus to approach, and [2] he heedlessly and recklessly *disregarded the danger* and turned across the road in front of plaintiff's truck *without looking* to see if anyone was in a dangerous

position at a time and place *when he should have anticipated such a condition*, and [3] thereby proximately caused the collision, the claim of wanton injury in the second count was available to plaintiff.

*Id*. at 266 (quoting *Roberts v. McCall*, 17 So. 2d 159, 160 (Ala. 1944)) (emphasis and brackets supplied).  Applying the rule to the facts, the court held that the wantonness claim should have been submitted to the jury, but only after noting the existence of testimony that plaintiff's approaching vehicle "*was obvious at the time*" defendant attempted the ill-fated maneuver.  *Id*. (emphasis supplied).  This testimony is, of course, in sharp contrast to the present case, where the nonmovants actually *admitted* that "Kirby did not see the plaintiffs' vehicle prior to pulling across the highway toward the median."[44]

The absence of any dispute as to Kirby's unawareness of Cryer's pick-up truck at the time he attempted the turn distinguishes this case from others involving similar facts as well.  In *Barker v. Towns*, 747 So. 2d 907 (Ala. Civ. App. 1999), for instance, the court sent a wantonness claim to a jury because "[plaintiff-passenger] Barker presented evidence tending to show that [defendant-driver] Towns entered the intersection [where the collision occurred] *after seeing the truck approaching at a high rate of speed*."  *Id*. at 909.  Similarly, the court in *Monroe v. Brown*, 307 F. Supp. 2d 1268 (M.D. Ala. 2004), denied summary judgment on the plaintiff's

---

[44] Doc. no. 34, Statement of Undisputed Facts, ¶ 31.

wantonness claim against a tractor-trailer driver who rear-ended him after he stopped

at a yellow light, reasoning that the defendant

> knew he was approaching a yellow light; knew [the plaintiff] had
> expressly warned those behind him, by applying his brakes once, that he
> might stop; and knew he had not maintained sufficient distance so that
> he would be able to stop his 67-foot tractor-trailer quickly if [the
> plaintiff] applied his brakes again to come to a full stop.

*Id.* at 1276.  As defendants' aptly summarized in their reply brief, these decisions "all

contain a common denominator which is not present in this case.  In those cases, the

defendant either saw the plaintiff and acted anyway[,] or completely failed to look

before initiating the conduct in question."[45]

Indeed, there are even more extreme cases where the defendant failed to look

and the Alabama Supreme Court nonetheless refused to allow a wantonness claim to

proceed to the jury.  Take, for example, *Ex parte Anderson*, 682 So. 2d 467 (Ala.

1996).  There, the defendant-driver, "attempting to turn left at an intersection, crossed

[blindly] in front of an oncoming lane of traffic" and collided with another vehicle,

thereby injuring her passenger.  *Id.* at 469.  The court held that the passenger had not

presented sufficient evidence of conscious endangerment to warrant submitting her

wantonness claim to a jury.  *Id.* at 470.  The operative piece of evidence was an

affidavit submitted by the defendant-driver, in which she stated that, while her view

---

[45] Doc. no. 36 (Defendants' Reply in Support of Summary Judgment), p. 8.

of the traffic was impaired, she "believed that it was safe to turn." *Id*.  The court reasoned that "[a]lthough [the driver] may have been negligent in turning left while her view of the oncoming traffic was blocked, we do not believe that this evidence is sufficient to prove that she was guilty of 'wanton conduct,' as that term is defined in our cases." *Id*.

*Ex parte Anderson* leaves the court very little "wiggle room" here.  Although apparently *something* prevented Kirby from noticing Cryer's vehicle, there are no allegations that Kirby even *realized* his view of the road was blocked.  (Of course, even if he had, *Ex parte Anderson* would seem to render that immaterial.)  Cryer has admitted that Kirby looked, yet did not see him pull out of a parking lot ahead of the more distant block of westbound traffic on which Kirby's attention was probably focused.  Even viewing the testimony in the light most favorable to Cryer, without evidence that Kirby recognized the risk of colliding with him and ignored it, there is simply no basis for sending a wantonness claim to a jury.

As for Moebes, the court has already noted that he did not respond to defendants' motion for summary judgment.  Having been ordered to respond, it cannot be seriously contended that he was unaware of his burden under Federal Rule of Civil Procedure 56.  *See* Fed. R. Civ. P. 56(e) (providing that the nonmovant "may not rest upon the mere allegations or denials of the adverse party's pleading, but the

adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial"). As stated above, the court is cognizant of the fact that it "cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion." *One Piece of Real Property*, 363 F.3d at 1102. Even so, because Moebes and Cryer were in the same vehicle, suffered injuries as a result of the same conduct, and presumably rely upon the same evidence, the court's reasoning in dismissing Cryer's wantonness claim is fully applicable to Moebes' wantonness claim. Therefore, judgment will be entered in favor of the defendants on the wantonness claims set forth in Count I of Cryer's complaint and Count II of Moebes' complaint.

## PART FIVE

### *Conclusion*

In accordance with the foregoing, defendants' motion for partial summary judgment will be granted. By separate order, the court will enter judgment in favor of the defendants on the wantonness claim contained within Count I of Cryer's complaint and Count II in its entirety, as well as Counts II through IV of Moebes' complaint. Count V of Moebes' complaint will be dismissed, since it is directed solely at fictitious defendants. Finally, defendants' motion to strike will be denied

as moot.   Only the negligence claims contained within the first count of each plaintiff's complaint will remain a part of this lawsuit.   An appropriate order will be entered contemporaneously herewith.

DONE this 23rd day of January, 2007.

_____
United States District Judge